### WESTERN KNITTING MILLS et al. v. UNITED STATES.
### No. J-29.

Court of Claims.
Jan. 9, 1933.

James P. Haffner, of Chicago, Ill. (Wetten, Pegler & Dale and Greydon L. Walker, all of Chicago, Ill., on the brief), for plaintiffs.

J. Robert Anderson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Argued before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiffs, Western Knitting Mills, a corporation, Wallace G. Kay, an individual, and Kay & Co., Inc., sue jointly to recover $13,284.84, the amount of a refund check paid by the Commissioner of Internal Revenue, April 15, 1925, to Western Knitting Mills, Inc., successor of the plaintiff Western Knitting Mills.

The refund was the amount of a determined overpayment of the taxes of the Western Knitting Mills for the year 1919, including interest.

Plaintiff Wallace G. Kay is the president and sole stockholder of the Western Knitting Mills, and holds the stock in trust for plaintiff Kay & Co., Inc. For convenience, and to avoid confusion, the Western Knitting Mills will be referred to as the Michigan corporation, and the Western Knitting Mills, Inc., will be referred to as the Illinois corporation.

The Michigan corporation prior to November 1, 1919, was engaged in the business of manufacturing and selling yarns and knit goods, and in manufacturing and dealing in wool and cotton. On November 25, 1919, the Michigan corporation sold and transferred all its property, effects, assets, and business, except cash in bank, to Wallace G. Kay, who on the same day sold and transferred the same property, effects, assets, and business to the Illinois corporation. The transfers were each made effective as of November 1, 1919.

In each of the transfers the real estate, buildings, etc., were transferred by warranty deeds, while the personal property, assets, and effects, including all accounts, bills receivable, and the exclusive right to use the name of the Michigan corporation and carrying on the business, were conveyed by written agreements.

The Illinois corporation was organized through the initiative of Kay & Co., Inc., for the express purpose of acquiring the assets, good will, patents, patent rights, and the taking over of the business of the Michigan corporation. Immediately after the acquisition of the assets and business of the Michigan corporation from Kay, the Illinois corporation took possession of the books, records, bills, and accounts receivable, factories, buildings, contracts, and effects of every kind and character formerly belonging to that corporation, and proceeded thereafter to operate the business, until sometime in 1926, when it became insolvent and went into the hands of receivers, using, as its office and place of business, the premises in Rochester, Mich., formerly occupied by the Michigan corporation.

In the written agreement between the Michigan corporation and Kay, the Michigan corporation sold and transferred to Kay "all tools, appliances, machines, fixtures, equipment, materials and supplies, manufactured product, merchandise, and all other personal property except cash on hand, * * * the good will of said business, and the exclusive right to the use of the name of the Western Knitting Mills, and carrying on said business; * * * it being the intention of the parties hereto that this bill of sale shall cover and include all personal property, assets and effects of every kind, nature, and description, wheresoever situated now belonging to the said first party, together with all leaseholds, contracts, and other rights, privileges, and franchises used or of use in or in connection with or acquired for said business. * * * "

In order that Kay, his heirs, administrators, assigns, etc., might be more effectively enabled to receive, recover, and obtain the benefits of the property assigned and transferred, the Western Knitting Mills in the agreement irrevocably appointed the said Kay, his heirs, administrators, executors, and assigns its attorney in fact "in the name of the said Western Knitting Mills or in the name of said Wallace G. Kay, or his assigns, as the case may require, but for the exclusive benefit and at the sole cost and risk of said Wallace G. Kay, or his assigns, to demand, collect in and receive from all persons liable to pay, deliver or account for the same, or any part thereof, all and singular the book and other debts, credits, moneys, accounts, and bills receivable and effects of said Western Knitting Mills, and to give effectual releases; * * * and to use and adopt all such remedies, proceedings, or means for getting in and recovering said assets * * * and enforcing and obtaining the benefits of any of the contracts of said Western Knitting Mills as may be deemed expedient, and * * * the said Western Knitting Mills will at all times ratify and confirm whatsoever the said Wallace G. Kay, his heirs, administrators, and assigns * * * shall do by virtue of these presents. * * * "

The language used in the written agree-

ment, whereby Kay transferred the personal effects, assets, and business formerly belonging to the Michigan corporation to the Illinois corporation, is substantially the same as that used in the transfer from the Michigan corporation to Kay. The Illinois corporation is designated and irrevocably appointed the attorney of the Michigan corporation and of Kay, with the same broad and comprehensive powers as those vested in Kay by the Michigan corporation.

Prior to the sales and transfers aforesaid, and in contemplation of such sales and transfers, plaintiff Wallace G. Kay assumed and agreed to pay any and all federal income taxes that might thereafter be levied against the Michigan corporation for the years 1917, 1918, and 1919, up to November 1, 1919. (Plaintiffs' petition, paragraph 5-B; also Plaintiffs' Exhibit 9 (a), paragraph 2 (b); and plaintiff Kay's deposition, pages 17 and 18, typewritten record of the evidence.)

Subsequent to the taking over of the property and business by the Illinois corporation, taxes were assessed against the Michigan corporation for the years 1917, 1918, and 1919, and were paid by plaintiff Kay with money furnished by Kay & Co., Inc. Claims for refund were filed and prosecuted by the Michigan corporation for each of the years. Refunds were allowed and paid—$33,128.76 for 1917; $57,663.72 for 1918; and $13,284.84 for 1919, including interest. The refund checks for the years 1917 and 1918 were issued in the name of the Michigan corporation and mailed to that corporation at its Rochester, Mich., address. These checks were received by the Illinois corporation and cashed by it after indorsing the name of the Michigan corporation thereon. The proceeds of these two checks are not involved in this suit, settlement in respect to each of them having been made between the plaintiffs and the Illinois corporation.

The refund check for the year 1919, in the sum of $13,284.84, was issued in the name of the Illinois corporation, and was received and cashed by that corporation. This is the check involved in suit.

The plaintiffs ground their right to recover on the contention that the Michigan corporation had the right, title, and interest to the proceeds of the refund check, it representing an overpayment of the taxes of that corporation; that the Illinois corporation did not pay the taxes and had no interest in the refund payment; that the Michigan corporation did not release, assign, or transfer the claim for a refund of its 1919 taxes to any one; that the government was obligated to pay the refund to the Michigan corporation; and that it has not discharged that obligation by its payment to another.

In support of these contentions, it is argued that, at the time the transfers were made, the taxes involved had neither been assessed nor paid, consequently the claim for refund was not then in existence, or even contemplated, and could not have been assigned as an asset of the Michigan corporation. It is further argued that the obligation of the Michigan corporation to pay whatever taxes might be assessed against it was a liability and not an asset, that, being a liability, it could not have been assigned as one of the assets of the corporation, and that the powers of attorney embodied in the bills of sale, or transfers, gave the Illinois corporation authority only to collect the former assets of the Michigan corporation, and not authority to *collect a debt owing* by the Michigan corporation to the government for additional taxes. [1] As we view the case, it is not necessary for us to decide whether the legal title to the proceeds of the refund check was in the Illinois corporation or in the Michigan corporation, and we do not decide that question, as we think the Illinois corporation was clearly authorized to receive and cash the check as the agent and attorney in fact of the Michigan corporation, and that the Commissioner of Internal Revenue was warranted in issuing and paying the check accordingly. Whether the Illinois corporation had a legal right to retain the proceeds of the check, or whether it was liable to account to the Michigan corporation or to Kay for the same, is a matter to be settled by the parties themselves, as they have already settled the refunds for the years 1917 and 1918.

The plaintiffs' contention that only assets of the Michigan corporation, and not liabilities, were assigned and transferred, is correct, as is the further contention that the obligation of the Michigan corporation to pay whatever taxes might be assessed against it was a liability and not an asset of that corporation, likewise the contention that the powers of attorney embodied in the bills of sale gave the Illinois corporation authority only to receive and collect in the assets of the Michigan corporation, and did not give it authority to collect a debt owing by the Michigan corporation to the government for additional taxes. These contentions, however, ignore the fact that the Michigan corporation,

at the time of the sale and transfer of its business and assets, had a contract with plaintiff Wallace G. Kay wherein he assumed and agreed to pay any and all federal income taxes that might thereafter be assessed against the corporation for the years 1917, 1918, and 1919. This agreement was an enforceable one, and to the extent of the amount of taxes subsequently assessed against the corporation had value, and was an asset of that corporation. The obligation of the Michigan corporation to pay whatever taxes were assessed against it was, as the plaintiff contends, a liability, but its contract with Kay that he would assume and pay the taxes was an asset of the corporation. The plaintiff Kay's agreement to pay the taxes, not the Michigan corporation's liability for the taxes, was the thing sold and assigned.

The respective powers of attorney authorized the Illinois corporation "to use and adopt all such remedies, proceedings, or means for getting in and recovering said assets * * * and *enforcing and obtaining the benefits of any of the contracts of the said Western Knitting Mills,* as may be deemed expedient. * * *" (Italics supplied.)

If it had authority, as the attorney of the Michigan corporation, to enforce and obtain the benefits of the agreement wherein Kay had obligated himself to pay the taxes in question, it necessarily follows, we think, that the Illinois corporation, as such attorney, likewise had authority to receive a refund of any overpayment of the taxes.

■ The government having refunded the determined overpayment of the 1919 taxes of the Michigan corporation to its duly authorized attorney and agent, that corporation is estopped from asserting a claim against the defendant for the amount so paid.

In view of our decision that the Illinois corporation was authorized to receive the refund in question, it is not deemed necessary to discuss or pass upon the other points raised by the parties in their respective briefs and oral arguments, other than to say that neither plaintiff Wallace G. Kay nor plaintiff Kay & Co., Inc., has such interest in the taxes refunded as would entitle them to maintain suit for the recovery of the same. The petition as to each of them, in any event, would have to be dismissed.

The petition is dismissed. It is so ordered.

BOOTH, Chief Justice, took no part in the decision of this case on account of illness.